and Barraven, S.A. Okay, Isaac Industries, I'm not even going to try. Ms. Dallal. May it please the court, Claire Dallal for Appellants Petroquimica, S.A. and Barraven, S.A. And with me at Council's table is my colleague Daniel Grossbaum. The court should reverse on two main grounds. First, the district court erred in granting summary judgment for service was never properly affected on either defendant. And as a result, the final judgment was void for ineffective service and lack of personal jurisdiction. As I read the district court record, Barraven asserted below that it was a Venezuelan government entity, right? That's correct. My predecessor counsel did make that assertion and we corrected the record in that regard when Whitencase was engaged in 2023. At what stage of the case? That was at the stage where plaintiffs had moved for summary judgment. But the end result in terms of service of process does not turn differently in terms of Barraven's status. Sure, I should say it can. But at that point, given that service of process is something you can give up as a party, why is, wasn't it too, and it may not make a difference, but why wasn't it too late for Barraven to shift gears about what it was or what it wasn't in terms of service of process? In other words, you say I am X, and because I'm X, you've got to proceed to serve me in this way. And the district court proceeds on that route, whether correctly or incorrectly, that's a separate issue. But then in the middle of the game at summary judgment, you say I'm not X anymore, I'm really Y. And now you've got to serve me in a different way because I'm Y and not X. I guess my question is, why is that not too late? Why shouldn't we take Barraven at its statement about what it was and then determine whether there was proper service of process? Certainly. So the issue of Barraven's status does not affect the service outcome. It is an unfortunate error, but I would say harmless at the end of the day that was made by former counsel. But Barraven is still a Venezuelan state-owned entity. It is not an agency or instrumentality that would benefit from the protections of the Foreign Sovereign Immunities Act. But the Rule 4H, which points you to Rule 4F for Barraven, still points to service under the Hague Service Convention, as it does for PECAven. And the Hague Service Convention was never complied with in this case. The district court found twice. Well, I have a question about that. The way you get the service for these entities is multilayered, right? With cross-references and references to other treaties and all of that. But at the end of the day, and you can tell me if I've gotten it wrong, at the end of the day, you have to send, let's use PECAven as an example. You've got to send the complaint, the summons, etc. to the central government agency in the country where you're trying to effect service of process, right? That's correct. And the treaty allows for a party to seek default judgment if the central authority has received the documents but has refused to act upon them, right? Under Article 15, which governs only a default judgment and speaks in permissive terms, this is what courts of a contracting state may do, but it does not speak to whether service has been effected. But if you can seek default, why can't you seek something lesser, which is, let me just go to the merits. I mean, default is, I don't hear the other side, I just grant default and you get a judgment in your favor. Here, if the central authority didn't act on the papers it received, the plaintiffs moved for default, the magistrate judge said, no, don't give them default because this case is too complicated, the equities are not right, and whatever. But for purposes of service, why isn't what would have been good enough for default good enough for defending on the merits? So all Article 15 in the Convention says is that the courts of a contracting state may enter a default judgment. It is not the end of the equation when it comes to service. The rules under which service is deemed effective are governed for Pekevin under 1608C and for Barraven under Rule 4L. And they tell the court when service has been effected. Without service being effective, there is no personal jurisdiction. Why does this matter? I mean, as I understand it, there was this motion for default, the magistrate judge recommended against it, but said, file answers, because effectively, service has happened here. And you, your predecessor counsel, we're going to get through a lot of things today where I think you're stuck with predecessor counsel's decisions, okay? I recognize that, okay. But your predecessor counsel filed an answer. Why are we talking about service of process? You appeared, your client appeared and submitted to the personal jurisdiction of this court, didn't it? It did not. So up until the time of the motion for default. Didn't it file an answer? It did file an answer. Why doesn't that submit to the personal jurisdiction of the court? Because up until that point, when the court had denied the motion for default judgment, both defendants had objected to service of process in no less than 10 filings. I know they had, but the district court said, the magistrate judge said, you know, effectively it's happened here. They should just have to file an answer. And you did it. You filed an answer. You're not supposed to do that until you get the personal jurisdiction and service issues adjudicated, but you went ahead and filed. I learned this in first semester civil procedure. So when you, when you come in and appear, that's why motions to dismiss are preliminary to filing answers. So there is not a single finding by the district court that service was affected as to either defendant. Why do you need one? Why do you need one if you filed an answer? So at this point, the district court in denying the motion for default judgment specifically held that service had been ineffective under the Hague convention and for reasons that Wait a minute. Wait a minute. We know we don't think it's proper to file an answer when service has been ineffective. So you didn't, your predecessor council, why weren't they required to do that? So defendants prevailed on the motion for default judgment. And in that order denying default judgment, the court expressly held that service had not been effective under the Hague convention, but more to the point, it also held that plaintiff had inexplicably failed to comply with alternative services to that, right? So the consequence to prevailing on that argument is that you don't have to file an answer. You don't have to appear to defend against the charges, but your predecessor council filed an answer and appeared for your client, right? That is correct. But on the, why does it matter anymore? Because under this court's precedent and Supreme court precedent, a judgment that is entered where service is ineffective is void for lack of personal jurisdiction. Yeah. That's true. If you don't appear by filing an answer, where's the case law that says that after you filed an answer, we can go back and revisit all of this. Where's the case all that says that, because I learned exactly the opposite 40 years ago. And that's the way I've understood the law for 40 years. And I've never seen anything to the contrary. So these errors are not mere technicalities, your honor, in terms of the ineffective service. That includes predecessor council's errors, Ms. DeLong. I mean, there are a lot, to me, there are just so many waivers here. There's a waiver of sovereign immunity defense for Pequivan because it wasn't asserted in the answer. There's a waiver of a lack of authority defense for Pequivan because it wasn't in the answer. There's, I mean, I look at this case and all of these things are predecessor council's decisions, I understand, but they have consequences. So if I could address your honor's point on the waiver of subject matter jurisdiction by Pequivan, of course, we dispute that that in fact was waived, Pequivan raised its sovereign immunity defense. The answer didn't assert it, did it? So it's answer responded to the commercial activity allegations at docket 82 paragraphs. But there's an amended complaint that asserts, that explains what the basis for the exception would be and to which there's no response. So there was a response, your honor, in paragraphs six and seven of the amended complaint, Pequivan neither admitted. You mean the answer? In the answer, apologies. In the answer to paragraphs six and seven, Pequivan responded that the commercial activity allegations called for a legal conclusion. They called for a legal conclusion because they implicated to the court's subject matter jurisdiction. Pequivan had previously raised subject matter jurisdiction and its immunity, which resulted in the amended complaint. There was no clear and unmistakable intent on Pequivan's part to waive sovereign immunity. And that is what is required under the case law. I thought your strongest argument, I don't know if it's a winning argument, but I thought your strongest argument about service was that either the magistrate judge or the district court said, you still need to do a couple of things to tie up service of process and that the plaintiffs never did. Right. The court had ruled that plaintiffs were entitled to alternative service. Correctly, the plaintiffs acknowledged, as the district court did, that the methods are hierarchical in nature and they had to be followed. So where the hate convention service was ineffective, you move down the statute to another manner of service. And the court ordered that service by mail in Venezuela should be attempted. Of course, we raised an objection to that because under Article 10 of the hate convention, Venezuela has objected to service by mail, but that did not prevent plaintiffs or the court from perfecting service under or requiring service under 1608B3A. That points to the availability of letters rogatory, which is consistent with Article 14 of the convention, which says if there are challenges or difficulties in hate convention service, they ought to be resolved through diplomatic channels. And that's exactly what A does. Can I just follow up? I don't want to go down that rabbit hole. I thought that either the magistrate judge or the district judge said, plaintiffs, you still need to do these little things to perfect service of process in this way. And I thought your argument on appeal was that those things were never done. That is correct. And what didn't they do that they were supposed to do as instructed by the magistrate judge or the district judge? They were reminded that they had never effected proper service and that the court had never found that service was effected and that they had chosen for some reason not to comply with the alternative service ordered. What did the judges tell the plaintiffs they had to do? The court instructed the plaintiff that service of process needed to be effected. There was never any attempts to follow service of process after the motion for default had been decided. And it is unclear from having prevailed on that motion for default, what else defendants could have done when you have within that decision, the court's clear language that service had never been effected. I see that my time has ended. Okay. Thank you. Well, you've saved some time for rebuttal. Mr. Lito. Good morning, and may it please the court, Matthew Lito and my colleague, Charlie Gorlice on behalf of the Apolli. Can we start where I finished off? Absolutely. Your honor. The thing is, this case is full of strange twists and procedural turns, but either the magistrate judge or the district judge told you, the plaintiffs, that you had not perfected service of process and told you that there were certain things you had to do to accomplish that. Their claim is you never did, even though you were instructed to and that you had failed. So what's the response? The response is, your honor, there were two separate motions. So in the first motion that was filed, there actually was not a motion for default based upon article 15. What we asked for was for the court to deem service effectual. So magistrate judge Becerra oversaw that hearing. And after she denied our motion to be deemed effective, finding that that's not relief you can obtain under article 15. And he moved for default. Subsequently did. But in that first order, the court found that we could obtain alternative service through mailing or whatever the hierarchy was at the time. Subsequent to that, noting that the court found, well, we didn't ask for a default, we filed the motion for default. Once that went before magistrate judge Goodman, actually judge Goodman stated that we have met the requirements of article 15 paragraph 2. However, based upon the case of Daly, and I believe I'm effectively been service and ordered answers to be filed right in the order, actually ordered an amended complaint to be filed, and then also stated that they were unable to challenge service going forward. Now, and they didn't object to that. They didn't say they didn't object to what the magistrate judge recommended there. They didn't. They didn't say, hey, that's not the proper. We still have this service objection. They went then filed an answer. That's exactly right, your honor. That was I was going to say they didn't file the amended complaint to our amended complaint. They filed no exceptions to the report and recommendation, which then became an order of the court. And as we stated in our brief, by failing to file a exception to the report and recommendation, they essentially waived the issue on appeal as well and failed to preserve it. But also going further to what you said, Chief Judge Pryor, they did file an answer and they participated in the case at that point in time. Service of process to me seems to be completely beside the point in the posture of this case. And I believe that they were properly served. And look, Judge Goodman. It wouldn't matter. Let's say they were improperly served. If they go and file an answer, end of story. Right. They're not going to talk about service of process anymore. Right. So it's our view they participated in the case. Service was proper is also our view. And also, the magistrate judge had been found. We're not I'm not going to default these parties because they have been involved in the case. They have notice of it. And there was case law to support that finding by Magistrate Judge Goodman, which became an order of the court. The second issue that I just wanted to raise after service, if the court does have any further questions on that, is the argument that we failed to meet our burden to establish the exception to sovereign immunity, which is the commercial activity exception. I will first note that the court did find that that was waived, once again, by failing to assert any affirmative defense on sovereign immunity in the answer and affirmative defenses. While I understand they may have been denials as saying things were legal conclusions, that's an affirmative. No, there was no affirmative defense of sovereign immunity raised in that answer. Exactly right. And that is an affirmative defense that must be waived or can or must be raised or can be deemed waived. And that's exactly what you've got the burden to prove it. We do. OK, so the burden shifting is an issue that was raised. Now, on the burden shifting, our case law says that it is waived if you file a response of pleading without raising the defense. That's right. And we believe that they raised it, that they waived it. But even if they had not waived it, we also believe that we met the exception for the commercial for the commercial exception to sovereign immunity. And when it comes to the burden, if that was an issue that the court needed to determine which Judge Golda did, under this court's opinion in Devo, Devin Goetia, which I hope I got that right, after an initial showing is made by the plaintiff, the burden then shifts to the defendant to show that the exception does not apply. And in that case, it's also that same standard is cited in Butler as well. And in this case, we certainly supported our claim with evidence that the commercial exception applied. And notably, not a single document was introduced by the other side in order to rebut that the commercial activity exception does, in fact, apply. And I'll also note, as far as their participation in the case, there was a difference between for purposes of the commercial activities exception, assuming it had been raised. Is there a difference between what Berevin did and what Pekevin did? One of them contracted with your clients for the purchase of goods, which were partially delivered and partially paid for. The other one, in your view of the evidence, entered into a settlement agreement to sort of step in in exchange for some other promises that your clients made. Correct. Is there a difference between the two in terms of applying the commercial activity exception, assuming there's no waiver issue? No, there's not, Your Honor. And the reason being is that to determine whether something fits within the commercial activity exception, the test really is whether a private individual would potentially enter into a similar type of agreement. And settlement agreements are certainly things that private individuals can enter into, just the same as a purchase and sale agreement. So it would not affect in any way the applicability of the commercial exception to either of the defendants. In addition, the argument, I think the threshold argument that was made or is made in the brief as to why the commercial exception does not apply is the argument about Mr. Silva's agency. There's a lot of the brief is spent on that issue. And first of all, I'll state that agency or lack of authority was not raised as an affirmative defense. So it's our view that that was in fact waived. But even if it had been raised, the case law within this circuit would indicate that Mr. Silva, there would be at least apparent or actual authority, actually, either of those two could apply. And with respect to the actual authority, I'll start there and I'll say to the GDG acquisitions case, which is a 2017 case from the circuit. In that case, the court found that actual authority occurred through ratification. So in other words, there was a promise made, I guess the argument was made that there was no authority for that promise, but actual payments were made subsequent to the document being executed. We have the exact same situation here. We have Mr. Silva signing an agreement on the date that the first payment is due under that very agreement, more than $2 million is wired from a Venezuelan account to Isaac Industries in Miami, Florida, consistent with that agreement. So under this GDG case, actual authority, I think is shown through ratification based upon that case. But in addition to that, we also have the issue of apparent authority. And under Devin Goetia, apparent authority is also suffices to waive sovereign immunity. And the apparent authority is again shown through the meetings that occurred in Miami. These individuals came to meet with Mr. Isaacs. They signed an agreement with him. They talked about the debt that this entity owed for the purchase and sale agreement. And they acted on it. So apparent authority was also reflected. And the important part of that is- What about ratification? Well, the ratification actually under the GDG is actually shows actual authority. That's the distinguishing factor in the case. And I think both are shown. You make a payment. You make a payment. Right. And not only do they make the payment, but the payment is to the penny of what was owed or was supposed to be paid under the agreement. So it was $2.5 million plus interest. And that was what was paid one day before the due date. So the argument that Mr. Silva did not have authority, again, there's no evidence to support that. The only evidence that they sought to introduce, albeit untimely, were the bylaws apparently of the company. Yeah. Even if you read them, don't establish it. They don't establish. All they say is that somebody can be given authority other than- Yeah. It doesn't tell you that this person lacked the authority. Right. And also, the declarations don't say that because the declarations have always stated throughout the case that there was no access to documents and records, which would not be substantial competent evidence to rebut the evidence that was introduced by Isaac. Now, also the issue that was raised was the stay. I just want to touch on that briefly, if I may. So since the inception of the case, the appellants have always asked for a stay because they were unable to get documentation.  And- Stay until we get things settled in Venezuela. Right. And that was the response is there was no indication of-  When that would happen, if that would happen, and if a stay were provided, what documents they believe they could acquire, which actually would rebut the claims being made by Isaac Industries. And I think Judge Scholl in his final summary judgment order said, it's almost like they're simply trying to delay the inevitable. And that's how we viewed it as well, because there was never an indication of any documents or any resources or evidence that would, again, rebut that this money was just, in fact, owed under these various contracts. And in fact, actually, I think that's- Unless the court has any additional questions for me, then we would ask the court to respectfully to affirm the final judgment on all accounts. Thank you. Thank you, Mr. Lito. Ms. Dallal.  You've got 30 minutes. Thank you. A few brief points on burden. The burden lies with plaintiff to demonstrate that an exception to immunity applies. It is not an affirmative- If you don't raise the defense in your answer to the amended complaint. In the abstract, that is correct, but the defense was not waived below because there was no clear and unmistakable intent to do so. There is an answer that doesn't raise the defense. That establishes the intent. Well, only if it is an affirmative defense, which it is not. Consistent with the statutory text context and the ordering of the statute, immunity is presumptive under 1604, and then it is on the plaintiff's burden to show that an exception to immunity- Didn't we refer to it as a defense in causa dea? Excuse me, your honor? Didn't we refer to it as a defense in causa dea? So if the court is inclined to view burden as an affirmative defense, and it may well be bound- that you reveal your intent to waive immunity when you file a response of pleading in an action without raising the defense of sovereign immunity. How am I to take that? So the courts have never been absolute in this respect, and there is no case that was cited by plaintiffs that shows that the defense was waived by failing to raise it in a response of pleading. Here it was raised- Causa dea versus Banco Latino Internacional, 11th Circuit, 2005, 14-13, F-3rd, 1285 at 1287. That's what I just read. So your honor, if the court is inclined to view the defense as an affirmative defense, that must be raised in an answer. And the responses that Pekeven made, stating that the commercial activity exception allegations called for a legal conclusion, then I would also point the court to Hungary versus Simon, which is pending a decision before the Supreme Court in which the court may address burden. And the United States has taken the position that sovereign immunity is not an affirmative defense consistent with Verlinden that needs to be raised in that- But even assuming all of that's true, we get beyond waiver and et cetera, et cetera. They put something forth to meet their burden. The burden of going forward shifted to you. What did you put on to controvert what they had presented about commercial activity exception? So we disagree that the burden shifted. It was plaintiffs- The burden of going forward, even if the ultimate burden of persuasion never moved and it rested with your opponent, they put stuff on the table. They said, this meets our burden of persuasion. At that point, the burden of going forward, not the ultimate burden of persuasion, rested with you. What did you put on to meet your burden of going forward? So again, Your Honor, the standard as enunciated in Butler is that the plaintiffs have the burden of production and on summary judgment as the movement, they had the burden- So your view is once they made a showing, you don't have to say anything about it? Their showing was insufficient as a matter of law to show that there was- So your answer is we didn't have to put anything on because they failed to have an issue right at the start. That is correct. They failed to discharge the burden. Can I press you on one aspect of that?  I mean, Berevin entered into a regular run-of-the-mill commercial contract. Why is that not within the commercial activities exception? There was a ton of evidence introduced about that. Why is Berevin not within the exception? Why does that fail as a matter of law with the evidence that they presented? So we do not object to the activity at issue being classified as commercial. What we have disputed is that the activity was authorized by an agent with apparent authority. We- No, but that's not for the initial. That's not for the initial transaction. I thought that was for the settlement. For Peckvin, but Your Honor didn't mention- Yeah, but not Berevin. Right. There's no claim that somebody unauthorized signed the initial or entered into the initial agreement for the sale of the product. Well, we do put forward the argument that there is no evidence that anyone authorized by Berevin was authorized to engage in any- You've got the invoices and you've got one payment. So the invoices are documents generated by plaintiff? Of course they are. They're the ones who sold the product. And they do not comply with the statute of frauds. They are not assigned rights. That's a different issue. That's a different issue. Those are different substantive legal issues. That's not the commercial activity exceptions concern. So I don't disagree with Your Honor's point that commercial activity, if that analysis applied to Berevin, which it does not because it is not an agency or instrumentality. If an individual authorized on Berevin's behalf did, in fact, enter into this arrangement with plaintiff, that would be commercial activity. But that's an academic point because it's not applicable to Berevin. On the bylaws, we do press that it was an abuse of discretion for the court to disregard those, particularly where plaintiff had, for the first time on summary judgment, submitted two exhibits out of the four that was never before produced. Thank you.